UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,
100 F Street, N.E.
Washington, D.C. 20549,

                          **Plaintiff,**

v.

ADRIAN P. DI VITA,

                          **Defendant.**

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges for its Complaint as follows:

### SUMMARY

.1.  This is an insider trading action against defendant Adrian P. Di Vita ("Di Vita"). From June 2004 until November 2006, Di Vita was a manager for Financial Planning and Analysis at Williams-Sonoma, Inc. ("WSM" or "company"). In that capacity, DiVita received material nonpublic information that enabled him to know that, when WSM issued a scheduled earnings press release on August 24, 2006, the company would lower its earnings guidance for fiscal year 2006 and the third quarter of the year. With this information, Di Vita sold all 707 of his WSM Stock Fund units and then purchased 1,000 put option contracts on WSM stock. After WSM issued its earnings release on August 24, 2006, the company's stock price fell by more than eight percent, and Di Vita sold his put options. As a result of his trading in the WSM Stock Fund units and the WSM put options, Di Vita avoided losses and had profits totaling $67,690.

2. Di Vita knew or was reckless in not knowing that he was prohibited from trading on material nonpublic information. By trading on material nonpublic information concerning WSM's projected earnings, Di Vita breached his duty to WSM and its shareholders and violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. 240.10b-5]. Accordingly, the Commission seeks a final judgment permanently enjoining Di Vita from violating these provisions, ordering him to disgorge his ill-gotten gains and losses avoided plus prejudgment interest, and imposing a civil money penalty.

## JURISDICTION

3. The Court has jurisdiction over this action pursuant to Sections 20(b) and 22 (a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d)(1), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u-1 and 78aa].

4. Defendant, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, and made use of the means and instrumentalities of interstate commerce, or the facilities of a national securities exchange, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

**DEFENDANT**

5.      Defendant Di Vita, age 41, resides in San Francisco, California. He joined WSM as an employee in September 1998 and, in June 2004, became a manager for Financial Planning and Analysis for one of WSM's business units, the Williams-Sonoma brand. Di Vita remained in the manager position until November 2006.

**RELEVANT ENTITY**

6.      WSM is a California corporation with its principal place of business in San Francisco, California. WSM is a specialty retailer of products for the home and sells its products through retail, direct-to-customer, e-commerce websites, and catalog operations channels. The company's core brands are Williams-Sonoma and Pottery Barn. During the relevant time, Pottery Barn represented more than fifty percent of WSM's earnings. WSM uses a fiscal year that ends on January 31. WSM's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act and is listed on the New York Stock Exchange. Options on the WSM's common stock are listed on the Chicago Board Options Exchange and other options exchanges.

**FACTS**

7.      From June 2004 to November 2006, Di Vita was a manager for Financial Planning and Analysis first for the direct-to-customer segment and, beginning in or about July 2006, the retail segment of the Williams-Sonoma brand. In that capacity, Di Vita had responsibilities for financial planning, budgeting, and forecasting.

8.      As an employee of WSM, Di Vita was entitled to participate in WSM's "401(k)" retirement plan for employees. Di Vita contributed to the 401(k) plan and, in connection with his contributions, invested in the WSM Stock Fund. The WSM Stock

Fund was comprised of WSM stock and a small amount, approximately .05%, of cash. During the relevant time, Di Vita owned 707 units of the WSM Stock fund, which represented approximately 2,794 shares of WSM stock.

9.  Also as an employee of WSM, Di Vita received WSM's Corporate Code of Conduct and periodic electronic mail notices informing him that he was prohibited from trading WSM securities, including securities held in 401(k) plan accounts, based on material nonpublic information about WSM.

10. On August 24, 2006, before the opening of trading, WSM issued an earnings release announcing its financial results for the second quarter of fiscal year 2006 and offering guidance for the year and the third quarter of the year. For the second quarter, the company announced increases in net revenues and earnings per share over the second quarter of fiscal year 2005. For the remainder of fiscal year 2006, however, the company announced that, due primarily to the trends that the company had observed with respect to its Pottery Barn brand, the company would reduce its guidance. The company, accordingly, reduced the guidance for its third quarter 2006 diluted earnings per share from a range of $.33 to $.35 to a range of $.22 to $.26. For fiscal year 2006, the company reduced its diluted earnings per share guidance from a range of $1.97 to $2.01 to a range of $1.87 to $1.94.

11. Following the announcement, WSM's stock price fell, and trading volume increased substantially. The stock price closed on August 24, 2006, at $29.89 per share versus the prior day's closing price of $32.60 per share, a decline of 8.31%. At the same time, the volume of shares traded increased to 5,966,400 versus the 1,975,200 shares traded on the previous day.

12. At all relevant times, Di Vita had access to, and accessed, a variety of WSM computer databases that contained nonpublic information about the financial performance, and projected financial performance, of WSM and its various brands. The information in those databases, among other things, reflected that, during August 2006, WSM was forecasting that Pottery Barn sales would not meet projections for the remainder of the year.

13. On August 10, 2006, Di Vita attended a monthly "forecast" meeting that WSM senior management conducted to discuss forecasted results of the Williams-Sonoma brand. During the meeting, a member of senior management informed the attendees, among other things, that the company was forecasting that the Pottery Barn brand would miss its sales forecast for the third quarter of fiscal year 2006 and the rest of the year by a substantial amount. Williams-Sonoma brand employees who attended the meeting were surprised at the large size of the projected reduction in Pottery Barn sales and commented among themselves that Williams-Sonoma brand sales would not be able to offset the decline in Pottery Barn sales.

14. On August 15, 2006, five days after the forecast meeting, Di Vita placed an order to sell all 707 units of the WSM Stock Fund that he held. He received proceeds of approximately $95,482 from the sale. Based on the difference between the $33.97 closing price of WSM stock on August 15, 2006, and the $29.89 closing price of the WSM stock on August 24, 2006, Di Vita avoided losses of approximately $11,400 by selling his WSM Stock Fund units in advance of the August 24, 2006, announcement. At the time when he placed his order to sell the WSM Stock Fund units, Di Vita knew that WSM would be issuing an earnings release on August 24, 2006.

15. On August 22, 2006, Di Vita attended a monthly "operating review meeting that WSM senior management conducted to discuss the prior month's results and the outlook for each WSM division. At that meeting, a member of WSM senior management again discussed Pottery Barn's difficulties and, among other things, said that the expectation was that those difficulties would not be reversed in the near future.

16. On August 23, 2006, the day after the operating review meeting, Di Vita purchased 1,000 WSM put option contracts at a price of $45.00 per contract. Each contract gave Di Vita the option to sell 100 shares of WSM stock at $30.00 on or before September 16, 2006, when the option expired. After the close of trading on August 23, 2006, Di Vita placed an order to sell his put option contracts at a price of $90.00 or better per contract. The following day, August 24, 2006, WSM issued its earnings release, and the price of the company's stock dropped. The drop in the price of WSM stock had the effect of increasing the value of the put options that Di Vita had purchased, and, following the issuance of the earnings release, Di Vita's put option contracts were sold at prices ranging from $90.00 to $120.00 per contract. Based on these prices, Di Vita realized profits of approximately $56,290 from his trading in WSM put option contracts. At the time when he placed his order to buy the put option contracts, Di Vita knew that WSM would be issuing an earnings release the following day.

17. As a manager for Financial Planning and Analysis at WSM, Di Vita owed a duty to WSM and its shareholders not to misuse corporate information that he learned while employed by WSM. As a result of his receipt of WSM's Corporate Code of Conduct, the company's Insider Trading Policy, and periodic electronic mail notices, and from other sources, Di Vita knew or was reckless in not knowing that he was prohibited

from trading WSM options and stock, including WSM stock in the WSM Stock Fund, on the basis of material nonpublic information. He further knew or was reckless in not knowing that the information that he learned in the course of his employment about the forecasted decline in sales of the Pottery Barn brand and other information related to the anticipated financial performance for the fiscal year 2006 and the third quarter of that year was material nonpublic information. By knowingly or recklessly trading on this information, Di Vita breached his duty to WSM and its shareholders.

### FIRST CLAIM FOR RELIEF

### Violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

18. Paragraphs 1 through 14 and 17 are re-alleged and incorporated herein by reference.

19. Defendant Di Vita, directly or indirectly, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

20. By reason of the foregoing, Di Vita violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]
and Exchange Act Rule 10b-5 [17 C.F.R. 240.10b-5]**

21.  Paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

22.  Defendant Adrian Di Vita, directly or indirectly, by the use of means or instrumentalities of interstate commerce or of the mails, or the facilities of a national securities exchange, in connection with the purchase or sale of securities, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

23.  By reason of the foregoing, Defendant violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Permanently enjoin defendant Di Vita from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Rule 10b-5 [17 C.F.R. § 240.10b-5];

**II.**

Order defendant Di Vita to disgorge ill-gotten gains and losses avoided derived from the unlawful trading alleged herein, plus prejudgment interest;

**III.**

Order defendant Di Vita to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**IV.**

Grant such other relief as this Court may deem just and appropriate.

Respectfully submitted,

Scott W. Friestad
Laura B. Josephs (D.C. Bar No. 414519)
Thomas D. Silverstein (D.C. Bar No. 256362)
Phil Gross

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549-5010A
Telephone: (202) 551-4968 (Josephs)
Facsimile: (202) 772-9230 (Josephs)
josephs@sec.gov

Dated: June 20, 2008

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

**I (a) PLAINTIFFS**
Securities and Exchange Commission

**DEFENDANTS**
Adrian P. Di Vita

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)  Marin I
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Laura B. Josephs, Esq.
Securities and Exchange Commission
100 F St. N.E., Washington, D.C. 20549-5010A
(202) 551-4968

Case: 1:08-cv-01060
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 6/20/2008
Description: General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (X) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**A. Antitrust**
- 410 Antitrust

**B. Personal Injury/Malpractice**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Medical Malpractice
- 365 Product Liability
- 368 Asbestos Product Liability

**C. Administrative Agency Review**
- 151 Medicare Act

Social Security:
- 861 HIA ((1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g)
- 864 SSID Title XVI
- 865 RSI (405(g)

Other Statutes
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 893 Environmental Matters
- 894 Energy Allocation Act
- 890 Other Statutory Actions (If Administrative Agency is Involved)

**D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**[X] E. General Civil (Other)**  OR  **F. Pro Se General Civil**

Real Property
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent, Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

Personal Property
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

Bankruptcy
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

Prisoner Petitions
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

Property Rights
- 820 Copyrights
- 830 Patent
- 840 Trademark

Federal Tax Suits
- 870 Taxes (US plaintiff or defendant
- 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- 610 Agriculture
- 620 Other Food & Drug
- 625 Drug Related Seizure of Property 21 USC 881
- 630 Liquor Laws
- 640 RR & Truck
- 650 Airline Regs
- 660 Occupational Safety/Health
- 690 Other

Other Statutes
- 400 State Reapportionment
- 430 Banks & Banking
- 450 Commerce/ICC Rates/etc.
- 460 Deportation

- 470 Racketeer Influenced & Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Satellite TV
- 810 Selective Service
- [X] 850 Securities/Commodities/Exchange
- 875 Customer Challenge 12 USC 3410
- 900 Appeal of fee determination under equal access to Justice
- 950 Constitutionality of State Statutes
- 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Insider Trading. Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Exchange Act Rule 10b-5

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:  YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  6/20/08    SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.